Jon A. Tostrud (Bar No. 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste 2100
Los Angeles, CA 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: *jtostrud@tostrudlaw.com*

Nathan D. Prosser
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Tel: (952) 941-4005
Fax:  (952) 941-2337
Email: *nprosser@hjlawfirm.com*

*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE PFEFFER, individually and on behalf of all others similarly situated, | Case No.: 2:22-cv-297 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| WILDERNESS SPORTS WAREHOUSE, LLC dba TACKLE WAREHOUSE, LLC; SPORTS WAREHOUSE INC. dba TENNIS WAREHOUSE, LLC; RUNNING WAREHOUSE, LLC; and SKATE WAREHOUSE, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

1

CLASS ACTION COMPLAINT

Plaintiff Jesse Pfeffer ("Plaintiff"), individually and on behalf of himself and all other persons similarly situated, brings this Class Action Complaint against Wilderness Sports Warehouse, LLC dba Tackle Warehouse, LLC, Sports Warehouse Inc. dba Tennis Warehouse, LLC; Running Warehouse, LLC; and Skate Warehouse, LLC ("Warehouses" or "Defendants"), and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Defendants are a group of ecommerce specialty sporting goods retailers that operate online websites that sell discount sporting goods in Maryland and across and the United States.

2.      On or about December 16, 2021, Defendants began notifying customers and state Attorneys General about a widespread data breach which affected Defendants' customers' payment card information that occurred on or about October 1, 2021 (the "Data Breach"). Hackers not only stole many of Defendants' customers' full names from its websites, the hackers also stole customers' personally identifiable information ("PII"), including addresses, payment card account numbers, card expiration dates, and payment card verification values.  The hackers got everything they needed to illegally use Defendants' customers' payment cards to make fraudulent purchases and to steal customers' identities. Defendants have not offered its affected customers any identity protection services, which leaves affected customers unprotected from fraudulent activity stemming from the breach.

3.      All of this PII was compromised due to Defendants' negligent and/or careless acts and omissions and the failure to protect customers' data.  In addition to their failure to prevent the Data Breach, Defendants failed to detect and report the breach for months.

4.      According to Defendants, on October 15, 2021 they became aware of the Data Breach when an unauthorized third party gained access and obtained

CLASS ACTION COMPLAINT

payment card information from Defendants' websites – most likely from a common e-commerce platform shared by Defendants.

5.      The stolen PII has great value to hackers due to its thoroughness and the numbers involved.  The hackers stole the full payment card information for nearly two million customers, including Plaintiff.  For example, the Maine Attorney General reports that the Data Breach affected 1,813,224 persons.[1]

6.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect its users' PII, (ii) warn users of their inadequate information security practices, and (iii) effectively monitor their websites and e-commerce platform for security vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

7.      Plaintiff and similarly situated customers ("Class Members") have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the present and certainly increased risk to their PII, which (a) may remain available on the dark web for individuals to access and abuse, and (b) remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

## JURISDICTION & VENUE

[1] *See Data Breach Notifications,* OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/595689f7-4781-4777-94eb-207a4a45915f.shtml (last visited Jan. 11, 2022). Each of the Defendant entities admits that the total number of persons impacted by the Data Breach is the same; i.e., 1,813,224.

CLASS ACTION COMPLAINT

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants. Defendant Running Warehouse, LLC's California Secretary of State business filings indicate that its three members reside in the State of California: Drew Munster, Joe Rubio, and Mark Sczbecki, each of whom are California residents and list 181 Suburban Road, Suite 120, San Luis Obispo, California 93401 as their address.[2] Defendant Skate Warehouse, LLC's California Secretary of State business filings indicate that its three members reside in the State of California: Mark Sczbecki, David Stubbs, and Stephan Garcia, each of whom are California residents and list 181 Suburban Road, San Luis Obispo, California 93401 as their address.[3] Defendant Tennis Warehouse, LLC is operated by Sports Warehouse Properties, LLC. According to Sports Warehouse Properties, LLC's California Secretary of State business filings, it has three members all of with an address of 191 Suburban Road, San Luis Obispo, CA 93401: Drew Munster, Ziyad Naccasha, and Mark Sczbecki.[4] Tackle Warehouse, LLC is operated by Wilderness Sports Warehouse, LLC. According to Wilderness Sports Warehouse, LLC's California Secretary of State business filings, it has three members all of with an address of 191 Suburban Road, San Luis Obispo, CA 93401: Mark Sczbecki, Drew Munster, and Richard Zeilenga.

---

[2] Running Warehouse, LLC: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200520110180-2195068 (last visited on Jan. 11, 2022).

[3] Skate Warehouse, LLC: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610057-21246891 (last visited on Jan. 11, 2022).

[4] Tennis Warehouse, LLC: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200721410200-23235467 (last visited on Jan. 11, 2022).

CLASS ACTION COMPLAINT

Accordingly, minimal diversity under 28 U.S.C. § 1332(d) exists in this case because Plaintiff is a resident of Florida and the members of Defendants in California.[5] Moreover, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiff Pfeffer is a Maryland citizen and therefore diverse from Defendant, which is not a citizen of Maryland.

9.    This Court has personal jurisdiction over Defendants because Defendants have systematic and continuous contacts with the state through their websites and because their physical business headquarters are located in San Luis Obispo, California and this District.

10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District. Defendants reside within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

11.   Plaintiff Jesse Pfeffer is a citizen of Maryland residing in Baltimore County, Maryland. Mr. Pfeffer used Defendant Tennis Warehouse's website on or about March 2021, to purchase tennis equipment. In November, 2021, he discovered fraudulent charges on his bank account which were the direct result of the Data Breach. He was notified by Defendants, via an email notice in December 2021 that his PII was impacted by the Data Breach.

12.   Defendants are California corporations with their principal place of business located at 181 Suburban Road, San Luis Obispo, California. During the relevant time, Defendants operated in ecommerce across the United States through their websites.

## SUBSTANTIVE ALLEGATIONS

---

[5] Tackle Warehouse, LLC: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610016-22878036 (last visited on Jan. 11, 2022).

CLASS ACTION COMPLAINT

*Defendants' Background*

13.     Defendants assure their customers that they are concerned about PII security and claim that they use "commercially reasonable ethical, physical, managerial, and technical safeguards to preserve the integrity and security of your personal information consistent with industry standards."[6]

14.     Defendant does not claim that it abides by the Payment Card Industry Data Security Standard ("PCI DSS") compliance, which is a requirement for businesses that store, process, or transmit payment card data.

15.     The PCI DSS defines measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

16.     As formulated by the PCI Security Standards Council, the mandates of PCI DSS compliance include, in part: Developing and maintaining a security policy that covers all aspects of the business, installing firewalls to protect data, and encrypting cardholder data that is transmitted over public networks using anti-virus software and updating it regularly.

17.     To purchase items on Defendants' websites, customers, at a minimum, are required to enter the following PII onto the website:

- Name;
- billing address;
- shipping address;
- email address;
- name on the payment card;
- type of payment card;
- full payment card number;

---

[6] *See Privacy Policy*, https://www.runningwarehouse.com/privacypolicy.html (last visited Jan. 11, 2022).

CLASS ACTION COMPLAINT

- payment card expiration date; and
- security code or CVV code (card verification number).

***The Data Breach***

18.   Starting on or about December 16, 2021, Defendants sent customers via email and mail a "Notice of Data Breach."   The notice informed affected customers that:

***What Happened?***

On October 15, 2021 [Defendants] became aware of a potential data security incident . . .   On November 6, 2021, the investigation determined that payment card information was obtained without authorization on October 1, 2021. On November 29, 2021, the investigation determined that your payment card information may have been affected during the incident.

***What Information was Involved?***

The incident may have involved payment card information, including your name, address, payment card number, expiration date, and payment card security code.[7]

19.   Defendants' notice to the state Attorneys General also provided this same information.[8]

20.   Defendants failed to use encryption to protect sensitive information transmitted online, and unauthorized individuals accessed Defendants' customers' unencrypted, unredacted information, including name, address, email address, and payment card information, which includes payment card number, CVV code,

---

[7]   https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853/bb36a1a3-b5e3-47b2-b2b4-c9e3e70a59c2/document.html   (last visited Jan. 11, 2022)

[8]   https://oag.ca.gov/ecrime/databreach/reports/sb24-548688 (last visited Jan. 11, 2022).

CLASS ACTION COMPLAINT

expiration date, and possibly more.[9]

***Value of Personally Identifiable Information***

21.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.  Experian reports that a stolen credit or debit card number can sell for $5-110 on the dark web.  Criminals can also purchase access to entire company data breaches from $900 to $4,500.

22.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach. Defendants were, or should have been, fully aware of the significant volume of daily credit and debit card transactions on its websites amounting to potentially hundreds of thousands of payment card transactions, and thus, the significant number of individuals who would foreseeably be harmed by a breach of Defendants' systems.

***Plaintiff Pfeffer's Experience***

23.     Plaintiff Pfeffer initially placed an order for tennis equipment on or about March, 2021 from Defendant Tennis Warehouse (www.tennis-warehouse.com). He checked out using his PNC Bank debit card which Defendant maintained as his payment card on file. In November 2021, he became award of

---

[9] *Id.* It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendants notified the California Attorney General of the Data Breach on Dec. 18, 2021, evidencing that the exposed data was unencrypted.

CLASS ACTION COMPLAINT

fraudulent unauthorized charges on his PNC Bank debit card by purchase confirmation emails sent by Etsy and Walmart for online purchases he had not made. He also discovered that his Etsy and Walmart accounts had had their passwords changed by an unauthorized party so that he no longer was able to access them. Mr. Pfeffer contacted his bank at that time to notify them of the unauthorized charges.

24.     On December 27, 2021, Plaintiff Pfeffer received an email from Defendants entitled "Notice of data security incident," indicating his PII was exposed by Defendants, including "payment card information, including your name, address, payment card number [], expiration date, and payment card security code." This is the same debit card he used to purchase the tennis equipment from Tennis Warehouse in March 2021.

25.     On the Tennis Warehouse website payment platform, Mr. Pfeffer entered his PII: name, address, payment card type and full number, CVV security code, payment card expiration date, and email address. During this transaction, Mr. Pfeffer does not recall if he was required to "agree" to any "Terms of Service" or to review the "Privacy Policy."

26.     On January 4, 2022, Mr. Pfeffer's bank notified him, via a phone call, that an unauthorized party attempted to breach his PNC bank account but was unsuccessful.  Mr. Pfeffer continues to have to spend time and effort in monitoring his credit and protecting his bank account from attempts by unauthorized cybercriminals.

27.     His bank changed the debit card number and issued a new debit card in response to the unauthorized charges in November 2021. In response the Data Breach notice and the fraud, Mr. Pfeffer has now had to take time out of his day to deal with the charges and the account number change.  He also researched credit monitoring options, changed all his online passwords, and instituted multi-factor authentication options where possible. Mr. Pfeffer also spends time monitoring his

CLASS ACTION COMPLAINT

credit daily through the credit monitoring service, Credit Karma. This was time he otherwise would have spent performing other activities, such as his job and/or leisure activities for the enjoyment of life.

28. In addition to the debit card fraud and reissuance of a new debit card, Mr. Pfeffer's email account was hacked, the password was changed by a third-party and he has subsequently been locked out his personal email account.

29. Knowing that a hacker stole his PII, and that his PII may be available for sale on the dark web, has caused Mr. Pfeffer great concern. He is now very concerned about payment card theft and identity theft in general. This breach has given Mr. Pfeffer hesitation about using Defendants' online services, and reservations about shopping on other online websites.

30. Now, due to Defendants' misconduct and the resulting Data Breach, hackers obtained his PII at no compensation to Mr. Pfeffer whatsoever. That is money lost for him, and money gained for the hackers – who could sell his PII on the dark web.

31. Mr. Pfeffer also suffered actual injury and damages in paying money to, and purchasing products from, Defendants' website during the Data Breach, expenditures which he would not have made had Defendants disclosed that they lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

32. Moreover, Mr. Pfeffer suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of cybercriminals.

33. Mr. Pfeffer has a continuing interest in ensuring his PII, which remains in Defendants' possession, is protected and safeguarded from future breaches.

### *Plaintiff Pfeffer's Efforts to Secure PII*

34. Defendants' Data Breach directly caused Mr. Pfeffer harm.

CLASS ACTION COMPLAINT

35.     Prior to the activity described above during the period in which the Data Breach occurred, the debit card that Mr. Pfeffer used to purchase products on Defendants' website had never been stolen or compromised. Mr. Pfeffer reviewed his credit accounts and other financial statements routinely and to his knowledge his debit card had not been compromised in any manner in the past before the Data Breach.

36.     Additionally, Mr. Pfeffer never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

37.     Mr. Pfeffer maintains his financial information in a secure location, and shreds any documents he receives in the mail that contain any of his PII, or that may contain any information that could otherwise be used to compromise his debit card.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

> All individuals in the United States whose PII was compromised in the Data Breach announced by Defendants on or about December 16, 2021 (the "Class").

39.     Plaintiff also seeks certification of a Maryland sub-class defined as follows:

> All individuals residing in the State of Maryland whose PII was compromised in the Data Breach announced by Defendants on or about December 16, 2021 (the "Maryland Class").

40.     Collectively the Class and the Maryland Class are referred to as the "Classes."

41.     Excluded from the Classes are the following individuals and/or entities: Defendants and its parents, subsidiaries, affiliates, officers and directors,

11

CLASS ACTION COMPLAINT

current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

42.    Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

43.    **Numerosity**: The Classes are so numerous that joinder of all members is impracticable. Defendants have identified 1,813,224 customers nationwide whose PII may have been improperly accessed in the data breach, and the Classes are apparently identifiable within Defendants' records.

44.    **Commonality**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

> a.  When Defendants actually learned of the data breach and whether the response was adequate;
>
> b.  Whether Defendants owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their PII;

CLASS ACTION COMPLAINT

c.  Whether Defendants breached that duty;

d.  Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' PII;

e.  Whether Defendants acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' PII;

f.  Whether Defendants knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

g.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

h.  Whether Defendants caused Plaintiff's and Class Members damages;

i.  Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised;

j.  Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief;

45.  **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

46.  **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

47.  **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and

CLASS ACTION COMPLAINT

potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

48.   Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

49.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.   Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.   Whether Defendants breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.   Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

e.   Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

50.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 49.

CLASS ACTION COMPLAINT

51.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

52.     The legal duties owed by Defendants to Plaintiff and Class Members include, but are not limited to the following:

     a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members in their possession;

     b.  To protect PII of Plaintiff and Class Members in their possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

     c.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and Class Members of the Data Breach.

53.     Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

54.     Various FTC publications and data security breach orders further form the basis of Defendants' duty. Plaintiff and Class Members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards.

55.     Defendants breached their duties to Plaintiff and Class Members. Defendants knew or should have known the risks of collecting and storing PII and the importance of maintaining secure systems.

56.     Defendants knew or should have known that their security practices did not adequately safeguard Plaintiff's and the other Class Members' PII, including, but not limited to, the failure to detect the data breach the moment it

CLASS ACTION COMPLAINT

happened.

57. Through Defendants' acts and omissions described in this Complaint, including Defendants' failure to provide adequate security and their failure to protect the PII of Plaintiff and the Classes from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the period when it was within Defendants' possession and control.

58. Defendants breached the duties they owed to Plaintiff and Class Members in several ways, including:

    a. Failing to implement adequate security systems, protocols, and practices sufficient to protect customers' PII and thereby creating a foreseeable risk of harm;

    b. Failing to comply with the minimum industry data security standards during the period of the data breach (e.g., There is no indication that Defendants' e-commerce platform is PCI DSS compliant and encrypts customers' order information, such as name, address, and credit card number, during data transmission, which did not occur here);

    c. Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to a data breach (e.g., Defendants did not detect the data breach for almost two weeks); and

    d. Failing to timely and accurately disclose to customers that their PII had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web (e.g., More than two months went by before Defendants notified customers of the data breach).

59. Due to Defendants' conduct, Plaintiff and Class Members are entitled to credit monitoring. Ongoing credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the

CLASS ACTION COMPLAINT

Class Members. Hackers not only stole many of Defendants customers' names from the website, they also stole customers' billing and shipping addresses, payment card numbers, CVV codes, and payment card expiration dates. They got everything they need to illegally use Defendants customers' credit cards to make illegal purchases. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class Members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

60. Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358 per year.

61. As a result of Defendants' negligence, Plaintiff and Class Members suffered injuries that include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account; (iv) the continued risk to their PII, which may remain for sale on the dark web and is in Defendant's possession, subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; and (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiff and Class Members, including ongoing credit monitoring.

62. These injuries were reasonably foreseeable given the history of security breaches of this nature. The injury and harm that Plaintiff and the other

CLASS ACTION COMPLAINT

Class Members suffered was the direct and proximate result of Defendants' negligent conduct.

<u>**COUNT II**</u>
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

63.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 62.

64.    Defendants owe duties of care to Plaintiff and Class Members which would require them to adequately secure PII.

65.    Defendants still possess PII regarding Plaintiff and Class Members.

66.    Although Defendants claim that they take the security of personal information very seriously and "have worked closely with the digital forensics firm to enhance the security of our sites to facilitate safe and secure transactions" there is no detail on what, if any, fixes have really occurred.[10]

67.    Plaintiff and Class Members are at risk of harm due to the exposure of their PII and Defendants' failure to address the security failings that lead to such exposure.

68.    There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties, and there is no reason to think Defendants have no other security vulnerabilities that have not yet been knowingly exploited.

69.    Plaintiff, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with its explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain

---

[10] https://oag.ca.gov/system/files/Consumer%20Notification%20Template.pdf (last visited Jan. 11, 2022)

CLASS ACTION COMPLAINT

reasonable security measures, including, but not limited to:

    a.  Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.  Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

    e.  Conducting regular database scanning and securing checks;

    f.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    g.  Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

    h.  Meaningfully educating its users about the threats they face as a result of the loss of their PII to third parties, as well as the steps Defendants' customers must take to protect themselves.

## COUNT III
### Violations of the Maryland Consumer Protection Act,
### Md. Comm. Code. §§ 13-301, *et seq*.
### (On Behalf of Plaintiff and the Maryland Subclass)

69.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 68.

70.    Plaintiff and Class Members purchased items from Defendants for personal, family, or household purposes.

CLASS ACTION COMPLAINT

71.     Defendants engaged in transactions and conduct to procure items on behalf of Plaintiff and Class Members.

72.     Defendants are "person(s)" as defined by Md. Comm. Code § 13-101(h).

73.     Defendants' conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-10(i) and § 13-303.

74.     Plaintiff and Class Members are "consumers" as defined by Md. Comm. Code § 13-101(c).

75.     Defendants advertised, offered, or sold "consumer goods" or "consumer services" as defined by Md. Comm. Code § 13-101(d).

76.     Defendants advertised, offered or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

77.     Defendants engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including:

    a.  False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

    b.  Failing to state a material fact where the failure deceives or tends to deceive;

    c.  Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered;

    d.  Deception, fraud, false pretense, false premise, misrepresentations, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale, lease or rental.

CLASS ACTION COMPLAINT

78.     Defendants engaged in these false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers by:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Personal Information, which was a direct and proximate cause of the Data Breach; Other economic damage that may not be detected for years to come.

    b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information , including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503, which was a direct and proximate cause of the Data Breach;

    d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the

CLASS ACTION COMPLAINT

Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503;

   f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Personal Information; and

   g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Comm. Code § 14-3503.

79. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Personal Information. Defendants' misrepresentations and omissions would have been important to a significant number of consumers in making financial decisions to purchase from Defendants. It is substantially likely that consumers would not have made the purchase choice in question had Defendants disclosed the omitted information.

80. Defendants intended to mislead Plaintiff and Class Members and induce them to rely on their misrepresentations and omissions.

81. Had Defendants disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendants would have been required to implement and adopt reasonable data security measures to comply with its legal obligations. Instead, Defendants maintained customer Personal Information in its databases, where it was insecure, and subject to attack in October 2021. Customers including Plaintiff and Class Members would not have provided Defendants with their PII had they known that Defendants were misrepresenting

CLASS ACTION COMPLAINT

the security of, and omitting the flaws in, its databases. Defendants could not have continued to sell goods through their websites had they disclosed the truth about their lax data security. Additionally, Plaintiff and Class Members would not have purchased or paid as much as they did for Defendant's goods had they known that Defendants would not keep their information secure. Accordingly, Plaintiff and Class Members did not receive the benefit of their bargain.

82.   Defendants acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights.

83.   As a direct and proximate result of Defendants' omissions and unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information.

## <u>COUNT IV</u>
**Violations of the Maryland Personal Information Protection Act,**
**Md. Comm. Code. §§ 1-3500, *et seq*.**
**(On Behalf of Plaintiff and the Maryland Subclass)**

84.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 83.

85.   Under Md. Comm. Code § 14-3503(a), "[t]o protect personal information from unauthorized access, use, modification, or disclosure, a business that owns or licenses personal information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of personal information owned or licensed and the nature and size of the business and its operations."

CLASS ACTION COMPLAINT

86.     Defendants are businesses that own or license computerized data that includes personal information as defined by Md. Comm. Code §§ 14-3501(b)(1) and (2).

87.     Plaintiff and Class Members are "individuals" and "customers" as defined and covered by Md. Comm. Code §§ 14-3502(a) and 14-3503.

88.     Plaintiff and Class Members' Personal Information, as described herein and throughout, includes personal information as covered under Md. Comm. Code § 14-3501(d).

89.     Defendants did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Comm. Code § 14-3503.

90.     The Data Breach was a "breach of the security of a system" as defined by Md. Comm. Code § 14-3504(1).

91.     Under Md. Comm. Code § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

92.     Under Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's Personal Information has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

93.     Because Defendants discovered a security breach and had notice of a security breach, Defendants had an obligation to disclose the Data Breach in a

24

timely and accurate fashion as mandated by Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

94.     By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

95.     As a direct and proximate result of Defendants' violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiff and Class Members suffered damages, as described herein.

96.     Pursuant to Md. Comm. Code § 14-3508, Defendants' violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Comm. Code §§ 13-101, et seq. and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act.

97.     Plaintiff and Class Members seek relief under Md. Comm. Code §13-408, including actual damages and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all of the members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.     For an Order certifying the Class as defined herein and appointing Plaintiff and her Counsel to represent the Class;

B.     For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

C.     For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

CLASS ACTION COMPLAINT

i.   prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii.   requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' PII;

v.   prohibiting Defendants from maintaining Plaintiff's and Class Members' PII on a cloud-based database;

vi.   requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendants to segment data by, among other things,

CLASS ACTION COMPLAINT

creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x.  requiring Defendants to conduct regular database scanning and securing checks;

xi.  requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.  requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

xiv.  requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring Defendants to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

CLASS ACTION COMPLAINT

xvi.   requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

xvii.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.   For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E.   For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F.   For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

G.   For such other and further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, on behalf of himself and all others similarly situated, hereby demand a jury trial for all issues so triable.

CLASS ACTION COMPLAINT

DATED: January 13, 2022                **TOSTRUD LAW GROUP, P.C.**


By:   /s/ Jon A. Tostrud
         Jon A. Tostrud
1925 Century Park East, Ste. 2100
Los Angeles, CA 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com


Nathan D. Prosser*
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Tel: (952) 941-4005
Fax:  (952) 941-2337
Email: nprosser@hjlawfirm.com


*pro hac vice* forthcoming


***Attorneys for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT